**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON**

**CIVIL ACTION NO. 13-141-DLB**

**BILLY J. HALCOMB**                                                               **PLAINTIFF**

vs.                  <u>**MEMORANDUM OPINION AND ORDER**</u>

**BLACK MOUNTAIN RESOURCES, LLC and
ALPHA NATURAL RESOURCES, INC.**                            **DEFENDANTS**

\*\*\*    \*\*\*    \*\*\*    \*\*\*

## I. INTRODUCTION

Billy Halcomb alleges that he was sexually harassed by co-workers and supervisors at an underground coal mine in Eastern Kentucky over the course of a three month period in 2012. He now sues the coal mine operator, Black Mountain Resources, LLC, and its parent company, Alpha Natural Resources, for maintaining a hostile and abusive work environment in violation of 42 U.S.C. § 2000e-2(a)(1). He also claims that both companies are vicariously liable for assault and battery, and intentional infliction of emotional distress.

This matter is before the Court on Defendants' motion to dismiss pursuant to Rule 12(b)(6). (Doc. # 5). The motion has been fully briefed and is now ripe for review. (Docs. # 14, 15). For the reasons stated herein, Defendants' motion will be **granted** and Halcomb's Complaint will be **dismissed**.

## II. FACTUAL BACKGROUND

In early 2012, Plaintiff Billy Halcomb worked as an hourly-wage coal miner at the Panther underground coal mine in Harlan County, Kentucky. That mine was operated by Defendant Black Mountain Resources, LLC ("Black Mountain"), a subsidiary of Defendant Alpha Natural Resources, Inc. ("Alpha"). However, the Complaint does not make clear who employed Halcomb, much less that he was employed by either Black Mountain or Alpha.

Between February and May of 2012, two supervisors and other hourly employees at the mine "engaged in a constant, pervasive pattern of abusive demeaning sexual conduct and crude, vulgar sexual language . . . that was directed at Halcomb." (Doc. # 1 at ¶ ¶ 7, 9). That conduct included "the rough and unwanted sexual grabbing of Halcomb's genitals." (*Id.* at ¶ 8, 9). In June 2012, Halcomb complained to management of Black Mountain and Alpha about the sexual conduct. (*Id.* at ¶ 10). The companies allegedly conducted a "superficial 'investigation'" into Halcomb's complaints and concluded that the complained-of conduct amounted to nothing more than "horseplay." (*Id.*).

Unsatisfied with Black Mountain and Alpha's response, Halcomb subsequently filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on October 18, 2012. The EEOC concluded that the "evidence obtained during the investigation supports [Halcomb's] allegations that he was subjected to a hostile work environment and sexual harassment in violation of Title VII based on sex, male." (*Id.* at ¶ 12). The EEOC thus made "conciliation efforts" between the parties but those efforts proved unsuccessful. Thereafter, the EEOC issued Halcomb a notice of right to sue. This lawsuit followed.

## III. ANALYSIS

### A. Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is factually plausible if the complaint contains factual allegations that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This does not require a showing that the defendant is probably liable, but "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* To meet this plausibility standard, the complaint must contain more than "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.*

### B. Halcomb fails to plead a Title VII hostile work environment that is plausible on its face

"Title VII of the Civil Rights Act of 1964 makes it 'an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting 42 U.S.C. § 2000e-2(a)(1)). "A plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986). To prevail on such a claim, the plaintiff must establish that: (1) he is a member of a protected class; (2) was subjected to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment created a hostile work environment; and that (4) the employer is vicariously liable. *Clark*

*v. United Parcel Serv., Inc.*, 400 F.3d 341, 347 (6th Cir. 2005).

But before the Court even gets to the elements of a hostile work environment claim, it must first consider whether Halcomb can sue the Defendants for a violation of Title VII. As stated above, Title VII makes it unlawful for "an *employer* . . . to discriminate against *any individual* . . . ." 42 U.S.C. § 2000e-2(a)(1) (emphasis added). Courts have interpreted this statute to require an employment relationship between the plaintiff and the defendant. *Gueye v. Gap, Inc.*, No. 2013-144, 2014 WL 197759, at *1 (E.D. Ky. Jan. 14, 2014) ("Plaintiff fails to allege an employment relationship between himself and [the Defendants]. This failure is fatal to his Title VII claim."); *Smiley v. Ohio*, 1:10-cv-390, 2011 WL 4481350, at *4 (S.D. Ohio Sept. 27, 2011) ("Given the Sixth Circuit's use of the common law agency test, this Court believes the Sixth Circuit would require [the Plaintiff] to demonstrate a common law agency relationship with the . . . Defendants before imposing liability under § 2000e-2(a)(1)."); *Higgins v. Vitran Exp. Inc.,* 1:09-cv-228, 2009 WL 3873662, at *4 (S.D. Ohio Nov. 18, 2009); *Allen v. Davidson Transit Org.*, 3:08-cv-0273, 2008 WL 4695042, at *5 (M.D. Tenn. Oct. 23, 2008). As one district court within the Sixth Circuit has said, a "prerequisite to maintaining an action under . . . Title VII . . is that plaintiff be an 'employee' of the defendant." *Savas v. William Beaumont Hosp.*, 216 F. Supp. 2d 660, 664 (E.D. Mich. 2002).

Contrary to Halcomb's assertion, the employment relationship must be pled in the complaint; failing to do so is fatal to a Title VII claim. *Gueye,* 2014 WL 197759, at *1. The Sixth Circuit has acknowledged that it "has not comprehensively explained the legal theories by which to identify 'employers' under the Civil Rights Act." *Satterfield v. Tennessee*, 295 F.3d 611, 617 (6th Cir. 2002). In addition to the normal employment

4

relationship, the Sixth Circuit appears to recognize three alternative theories:

> First, we have stated in several cases that for the purposes of the ADA and other Civil Rights Acts, an employer/employee relationship is identified by considering: the entire relationship, with the most important factor being the employer's ability to control job performance and employment opportunities of the aggrieved individual. Second, we have recognized that an agent of an employer may be identified as an employer for the purposes of the Civil Rights Acts if the employer delegated employment decisions to the agent. Finally . . . we have stated that: Title VII does not require a formal employment relationship between the plaintiff and the defendant. Rather, a plaintiff is protected if the defendant is one who significantly affects access of any individual to employment opportunities.

*Id.* (internal quotations and citations omitted).

Halcomb has failed to allege who employed him, much less that he was employed by either Defendant. Moreover, Halcomb's Complaint is also wholly devoid of any factual allegations to support one of the three alternative theories. He does not say whether the Defendants had any control over an important aspect of his employment. Nor does he say that either of the Defendants acted as an agent of his employer. Finally, he makes no suggestion that either of the Defendants somehow affected his access to employment opportunities. At best, he alleges that Defendant Black Mountain Resources "operated" the Panther underground coal mine, and that Defendant Alpha Natural Resources, inc. wholly owned Black Mountain. But these allegations suggest nothing about Halcomb's relationship to either Defendant. Without any allegations of an employer-employee relationship, Halcomb's Title VII claim cannot proceed to discovery.

Halcomb, of course, would have it another way. He believes he has alleged sufficient facts for the Court to find it plausible that Defendants are his employers. He argues it is "common sense that in an underground coal mine, the miners are plausibly employees of the operator." (Doc. # 14 at 4). He goes on to explain why it is "common

5

sense": "[a]n underground coal mine is a highly regulated workplace that requires organized transportation between the opening of the mine and the places underground where miners work. A mine is not like a construction site in which a variety of independent contractors work and interact without being employed by a common boss." (*Id.*). But there are two problems with this argument. First, the Court simply disagrees that it is "common sense" that an operator of a coal mine is likely the employer of the coal miners. Second, the additional facts Halcomb states in his memorandum in opposition are not alleged in his Complaint. The Complaint must stand on its footing to survive a 12(b)(6) motion; here, it does not.

Halcomb also suggests he was without adequate information at the time he filed his Complaint to allege an employer-employee relationship, and that this issue is best suited for discovery. The Court is not persuaded by this argument. Employees know who they answer to, who controls their daily activities, and who pays them. Simply put, employees know the identify of their employer. While discovery might be useful to gather additional information about the employment relationship, the Court does not believe that Halcomb was without *any* knowledge of his employer such that he could not be required to plead his employer's identity. As such, he is not being subject to an unascertainable standard by being required to plead an employment relationship. Having failed to do so, the Court will **dismiss** Halcomb's Title VII claim.

Defendants also move to dismiss Halcomb's Title VII claim because he fails to allege: (1) he was subjected to a hostile work environment "because of" his gender; (2) he was subjected to a severe or pervasive conduct; and (3) vicarious liability. Whereas Halcomb pled no facts to suggest he was employed by Defendants, he has alleged *some*

facts to support each of these elements. Rather than weigh those facts to determine whether the Court has an additional basis to dismiss Halcomb's Title VII claim, the Court will rest its decision to dismiss his hostile work environment claim on the basis that he failed to plead the requisite employment relationship.

**C. Halcomb has failed to sufficiently plead that Defendants are vicarious liable for the actions of the alleged tortfeasors**

In Counts 2 and 3 of his Complaint, Halcomb alleges that Defendants are vicariously liable for assault and battery, and intentional infliction of emotional distress. Although he does not specifically identify the alleged tortfeasors within those Counts, the factual allegation section of the Complaint suggests it was Ben Adams and Justin Adams, both described as "supervisors at the Panther mine," and unnamed hourly employees. However, as Defendants correctly argue, Halcomb has failed to plead sufficient facts to show it is plausible that Defendants are liable for Ben, Justin, and the unnamed hourly employees' actions.

The Kentucky Supreme Court has adopted the Restatement (Third) of Agency's definition of vicarious liability. *Papa John's Intern., Inc. v. McCoy*, 244 S.W.3d 44, 51-52 (Ky. 2008). The Restatement defines the scope of vicarious liability as follows:

> (1) An employer is subject to vicarious liability for a tort committed by its employee acting within the scope of employment.
>
> (2) An employee acts within the scope of employment when performing work assigned by the employer or engaging in a course of conduct subject to the employer's control. An employee's act is not within the scope of employment when it occurs within an independent course of conduct not intended by the employee to serve any purpose of the employer.
>
> (3) For purposes of this section,
>
> > (a) an employee is an agent whose principal controls or has the right

7

> to control the manner and means of the agent's performance of work, and
>
> (b) the fact that work is performed gratuitously does not relieve a principal of liability.

*Id.* (quoting Restatement (Third) of Agency § 7.07 (2006)).

Much like Halcomb's Title VII claim, he has failed to allege any facts to make it plausible that the alleged tortfeasors were employees or agents of the Defendants. He has identified Ben and Justin Adams as "supervisors at the Panther mine." He has listed unnamed "hourly employees" as alleged torfeasors. But he has not identified who employees any of these individuals. At best, he has identified Defendant Black Mountain as the "operator" of the mine. However, these facts say nothing at all about whether Black Mountain employed or exercised any control over the alleged torfeasors. Ultimately, while it might be possible that Black Mountain employed Ben, Justin, and the unnamed hourly employees, the Court does not believe these allegations rise to the level of plausibility required by *Iqbal* and *Twombly*. Therefore, Halcomb's state-law claims against the Defendants are **dismissed**.

## IV.   CONCLUSION

Accordingly, for the reasons stated herein, **IT IS ORDERED** as follows:

(1)   Defendants' Motion to Dismiss (Doc. # 5) is hereby **GRANTED**;

(2)   Plaintiff's Complaint is hereby **DISMISSED**; and

(3)   This matter is hereby **STRICKEN** from the Court's active docket.

This 26th day of August, 2014.



Signed By:
David L. Bunning  DB
United States District Judge

G:\DATA\Opinions\London\13-141 MOO granting MTD.wpd