CIVIL ACTION NO. 13-141-DLB

BILLY J. HALCOMB                                                                    PLAINTIFF

vs.                          MEMORANDUM OPINION AND ORDER

BLACK MOUNTAIN RESOURCES, LLC and
ALPHA NATURAL RESOURCES, INC.                              DEFENDANTS

*** *** *** ***

## I. INTRODUCTION

This matter is before the Court on Plaintiff Billy Halcomb's Motion to Amend Judgment (Doc. # 19) and Motion for Leave to Amend Complaint (Doc. #21). The motions have been fully briefed (Docs. # 22, 25, 26) and are ripe for the Court's review.

On July 18, 2013, Plaintiff, a coal miner, filed a complaint against the mine's "operator," Defendant Black Mountain Resources, L.L.C. (Black Mountain), and its parent company, Defendant Alpha Natural Resources, Inc. (Alpha). (Doc. # 1). In his Complaint, Plaintiff asserts that his supervisors and co-workers engaged in a pattern of sexual harassment that included grabbing his genitals and using vulgar language. (Doc. # 1, ¶¶ 7,8). Based on this conduct, he alleges that Defendants are liable for maintaining a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1); and vicariously liable under state law for assault, battery, and intentional infliction of emotional distress (IIED).

1

On August 21, 2013, Defendants filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6). (Doc. # 5). In support of their motion, Defendants argued that the Title VII claim should be dismissed because, among other reasons, the Plaintiff failed to plead that he had an employment relationship with the Defendants. *Id.* They also suggested that the state law claims were deficient because, among other reasons, the Plaintiff failed to plead facts that would impose vicarious liability on the Defendants. *Id.*

The Court found merit with both arguments. With respect to the Title VII claim, the Court recognized that Title VII requires an employer-employee relationship between a plaintiff and defendant. (Doc. # 18 at 4). However, the Court found the Plaintiff's Complaint "wholly devoid of any factual allegations" that the Defendants were his employer. *Id.* at 5. Instead, the Complaint simply alleged that Black Mountain "operated" the mine and that Black Mountain was a "subsidiary" of Alpha. (Doc. # 1, ¶¶ 4,6).

Regarding the state law claims, the Court pointed out that the Plaintiff failed to identify the tortfeasors. (Doc. # 18 at 7). While the Complaint seemed to suggest that the culprits were Justin Adams and Ben Adams, it did not identify who employed these individuals. *Id.* Rather, it merely stated that they were "supervisors at the Panther Mine." (Doc. # 1, ¶ 7). Because Kentucky law requires an employment relationship for vicarious liability to attach, *Papa John's Intern. Inc., v. McCoy*, 244 S.W.3d 44, 51-52 (Ky. 2008), the Court dismissed the state law claims, (Doc. # 18 at 8). On September 24, 2014, the Plaintiff filed contemporaneous Motions to Amend Judgment and for Leave to Amend Complaint. (Doc. # 19, 21).

## II. APPLICABLE STANDARD

 Rule 15 motions to amend filed prior to an entry of judgment are "freely" granted "when justice so requires." Fed.R.Civ.P. 15(a); *see Foman v. Davis*, 371 U.S. 178, 182 (1962). However, Rule 15 motions filed after an entry of judgment must meet Rule 59's "heavier burden." *Leisure Caviar v. U.S. Fish and Wildlife Service*, 616 F.3d 612, 616 (6th Cir. 2010). This higher threshold is necessary to "protect the finality of judgments and the expeditious termination of litigation." *Id.* at 615-16 (quoting *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002)). When a party files simultaneous Rule 15 and 59 motions, it is "seeking one theory of relief," and thus the inquiry into both motions "turns on the same factors." *Leisure*, 616 F.3d at 615-16.

The Court recognizes that, after granting Defendants' 12(b)(6) motion, it did not set out a judgment in a separate document as required by Fed.R.Civ.P. 58(a). Accordingly, judgment is not deemed entered in this case until "150 days have run from the entry [of the Court's order] in the civil docket." Fed.R.Civ.P. 58(c)(2); *Bonner v. Perry*, 564 F.3d 424, 427 (6th Cir. 2009). Because 150 days have not lapsed, there has not been a final judgment in this case. *See Bonner*, 564 F.3d at 428. Either party could have requested that the Court set out the judgment in a separate document, Fed.R.Civ.P. 58(d), but neither did.

Although there has not been a final judgment in this case, there are two reasons the Court will evaluate Plaintiff's Motions under Rule 59(e)'s more stringent standard. First, the Court's August 8, 2014 Order (Doc. # 18) dismissed all claims against all parties, and therefore applying Rule 59's standard will serve to "protect the [Order's] finality." *Leisure*, 616 F.3d at 615-16. Second, because Rule 59 imposes a heavier burden on the Plaintiff

3

than Rule 15, evaluating Plaintiff's Motion under Rule 59 subsumes and covers Rule 15's standard. The Court now turns to the merits.

### III. STANDARD OF REVIEW

Under Rule 59, a court may alter the judgment based on: "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Id.* at 615 (quoting *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir.2005)). And while it is true that a party seeking to amend a complaint after an adverse judgment faces a "heavier burden," a district court still has "considerable discretion in deciding whether to grant" the motion. *Leisure*, 616 F.3d at 615; *see U.S. ex rel. SNAPP, Inc., v. Ford Motor Co.*, 532 F.3d 496, 507 (6th Cir. 2008) ("Although Relator filed his motion to file a Second Amended Complaint subsequent to the district court's final order dismissing Relator's First Amended Complaint, we allow a district court discretion to set aside a prior judgment under Rule 59(e) and permit an amended complaint.").

### IV. ANALYSIS

**A. Plaintiff's Rule 59 Motion is Timely**

Defendants first argue that Plaintiff's Rule 59 motion is untimely. Rule 59 motions must be filed within "28 days after the entry of judgment." Fed.R.Civ.P 59(e). The Court signed the Order dismissing Plaintiff's claims on August 26, 2014. (Doc. # 18). Defendants suggest that Plaintiff's Rule 59 motion (September 24, 2014) was therefore filed twenty-nine days after the entry of judgment. Defendants argument fails for two reasons. First, there was no judgment entered in this case, so the Rule 59 clock is not yet ticking. Second, even assuming *arguendo* that the Court's Order is a judgment, the docket sheet

shows that the clerk did not enter it until August 27, 2014.  Because the date of entry is the relevant date, *see* Local Rule 77.1, Plaintiff filed his Rule 59 Motion within the twenty-eight day requirement.

**B.    Justice Requires Amending the Court's August 27, 2014 Order**

When evaluating a post-judgment motion to amend, a Court pays particular attention to the "movant's explanation for failing to seek leave to amend prior to entry of judgment." *Morse*, 290 F.3d at 800.  When considering such a motion, the "governing principle" guiding the Court's discretion is whether doing so "is required to prevent an injustice."  *U.S. ex rel. SNAPP, Inc.*, 532 F.3d at 508 (quoting *Davis by Davis v. Jellico Community Hospital, Inc.*, 912 F.3d 129, 133 (6th Cir. 1990)).

Under the particular facts and circumstances of this case, the Court finds that justice requires allowing the Plaintiff to amend his complaint.  Plaintiff's original complaint failed to allege an employment relationship with the Defendants.  (Doc. # 18).  But as Plaintiff's counsel persuasively argues, his failure to do so was a result of both the Eastern Kentucky coal industry's unique business structure, as well as reliance on his previous litigation experience with the Defendants.  (Doc. # 22 at 9).

The facts alleged in Plaintiff's Second Amended Complaint, which at this stage of the litigation must be accepted as true, reveal the unique difficulty an Eastern Kentucky coal miner faces in identifying his employer.  The Plaintiff worked at coal mines named Panther Mining, L.L.C. and Stillhouse Mining, L.L.C.; both mines have applied for certificates of withdrawal since the commencement of this lawsuit and listed Alpha's address on the certificate.  (Doc. # 20, ¶¶ 3,6).  But while Plaintiff worked at the Panther and Stillhouse mines, he applied for his job at Defendant Black Mountain's office.  *Id.* at ¶

5

7.  And despite Plaintiff working at Panther and Stillhouse and applying for a job at Black Mountain, it is Alpha's logo that appears in Plaintiff's employee handbook, its address listed on his pay stub, and its name in the employer space of his benefits documents.  *Id.* at ¶¶ 8,9.  The Court does not criticize the Defendants' organizational structure, but it does recognizes the difficulty that it places on a coal miner attempting to plead an employer-employee relationship.

As an additional reason to amend the Court's Order, Plaintiff's counsel cites his previous litigation experience involving miners at the Panther Mine.  (Doc. # 22 at 9).   In those cases, Black Mountain is named as Panther Mine's parent and co-defendant.  These cases were brought before the Federal Mine Safety and Health Review Commission (FMSHRC), a body that is no doubt intimately familiar with the organizational structures prevalent in the coal industry.  While it may not have been prudent for counsel to rely on his previous litigation experience with the FMSHRC when this bringing this lawsuit, that reliance is  understandable and cuts against the argument that plaintiff was acting in bad faith.  For these reasons, the Court finds that justice requires granting Plaintiff's Motion to Amend Judgment.

**C.     No Reason Exists for Denying Plaintiff's Motion for Leave to Amend**

Rule 15(a) motions for leave to amend should be granted so long as there is not (1) undue delay; (2) bad faith; (3) undue prejudice to the opposing party; or (4) futility of amendment.  *Foman*, 371 U.S. at 182.  The Court will succinctly address the first three factors and then analyze the futility factor in more detail.

**1.     There is no undue delay, bad faith, or undue prejudice**

The Court finds no undue delay or bad faith on the Plaintiff's behalf, and further finds

that the Defendants would not suffer undue prejudice by allowing the Plaintiff to amend his complaint. First, Plaintiff filed his Motions to Amend Judgment and for Leave to Amend Complaint twenty-eight days after entry of the Court's Order dismissing his claims, making his motions timely. *See* Fed.R.Civ.P. 58(e), 15(a)(2). Second, as discussed above, the Court finds well-taken the Plaintiff's explanation for why he failed to properly allege an employment relationship with the Defendants. Third, the Defendants would not suffer undue prejudice: Plaintiff's Amended Complaint does not raise new claims or assert new theories for relief, and there is no indication that the evidence in this case has gone stale or that discovery has even begun.

### 2. Plaintiff's Amended Complaint alleges a plausible employer-employee relationship

A court can deny a motion for leave to amend a complaint when granting the motion would be futile; for example, if the amended complaint would not survive a motion to dismiss. *Hoover v. Langston Equip. Assocs.,* 958 F.2d 742, 745-46 (6th Cir. 1992). Defendants profess that this is such a case. They insist that Plaintiff's Amended Complaint continues to fail to allege both that he had an employment relationship with the Defendants and that the Defendants employed the alleged tortfeasors.

To prevail on a Title VII claim, a plaintiff must demonstrate that he had an employment relationship with the defendant. *McQueen v. Equinox Intern Corp.,* 36 F. App'x 555, 556 (6th Cir. 2002) (holding that dismissal of a plaintiff's Title VII claim was appropriate because he had not established "the existence of an employer-employee relationship between himself and [the defendant].");* Gueye v. Gap, Inc.*, No. 2013-144, 2014 WL 197759, at *1 (E.D. Ky. Jan. 14, 2014) ("Plaintiff fails to allege an employment

relationship between himself and [the Defendants]. This failure is fatal to his Title VII claim."); *Smiley v. Ohio*, No. 1:10-cv-390, 2011 WL 4481350, at *4 (S.D. Ohio Sept. 27, 2011) ("Given the Sixth Circuit's use of the common law agency test, this Court believes the Sixth Circuit would require [the Plaintiff] to demonstrate a common law agency relationship with the . . . Defendants before imposing liability under [Title VII].").

The Sixth Circuit recognizes three theories under which a plaintiff can prove an employment relationship:

> First, we have stated in several cases that for the purposes of the ADA and other Civil Rights Acts, an employer/employee relationship is identified by considering: the entire relationship, with the most important factor being the *employer's ability to control job performance and employment opportunities* of the aggrieved individual. Second, we have recognized that an agent of an employer may be identified as an employer for the purposes of the Civil Rights Acts if the employer delegated employment decisions to the agent. Finally . . . we have stated that: Title VII does not require a formal employment relationship between the plaintiff and the defendant. Rather, a plaintiff is protected if the defendant is one who *significantly affects access of any individual to employment opportunities*.

*Satterfield v. Tennessee*, 295 F.3d 611, 617 (6th Cir. 2002) (internal citations omitted) (emphasis added); *McQueen,* 36 F. App'x at 556 (recognizing that a plaintiff can prove an employer-employee relationship with the defendant by establishing that the defendant "interferes with or affects an individual's access to employment opportunities.")

Unlike Plaintiff's original Complaint, the Amended Complaint pleads facts, which taken as true, show it is plausible that he had an employment relationship with both Black Mountain and Alpha. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that to survive a motion to dismiss, a plaintiff must plead facts that demonstrate it is plausible he is entitled to relief). With respect to Black Mountain, Plaintiff alleges that he received his job by filing out an application at Black Mountain's office. (Doc. # 20, ¶ 7). And he states that after he

8

complained of the sexual harassment, Black Mountain's personnel director, Rick Raleigh, transferred him to another mine. *Id.* at ¶ 16. Further, Plaintiff asserts that Black Mountain controlled the "mantrip" that provided access to the mines. *Id.* at ¶ 10.

Turning to Alpha, Plaintiff alleges that its logo was present on his employee handbook, its address was recorded on his paycheck, and its name was listed in the employer space of his benefits documents. He also proclaims that along with Black Mountain, Alpha had control over the "mantrip." *Id.* at ¶ 10. Defendants argue that all these facts are irrelevant in establishing Title VII liability. (Doc. # 25 at 12 - 13). The Court disagrees and finds that these facts allow it "to draw the reasonable inference," *Iqbal*, 556 U.S. at 678, that the Defendants had the ability to both control the Plaintiff's work and affect his access to employment opportunities, *see Christopher v. Stouder Memorial Hosp.*, 936 F.2d 870, 874-77 (6th Cir. 1991) (holding that a plaintiff could bring a Title VII retaliation claim against a defendant-hospital that controlled and impacted the plaintiff's ability to practice as a nurse.).

Plaintiff's Amended Complaint also establishes that it is plausible that the Defendants employed the alleged tortfeasors; namely, Ben Adams, Justin Adams, and other unnamed hourly employees. (Doc. # 20, at 6). Under Kentucky law, an employee is "an agent whose principal controls or has the right to control the manner and means of the agent's performance of work." *Papa Johns*, 244 S.W.3d at 51-52 (quoting Restatement (Third) of Agency § 7.07 (2006)). Plaintiff alleges that Ben Adams and Justin Adams were supervisors at the Panther mine and that he has always considered them the Defendants' employees. (Doc. # 20, ¶ 12). He further asserts that after he complained of the harassment, Black Mountain and Alpha had a sexual harassment workshop at Black

Mountain's office and that all miners were required to attend.  *Id.* at ¶ 17.  Because Defendants controlled access to the Panther mine via the "mantrip,"  regulated the employment opportunities there, and had the ability to require all miners to attend a meeting (including, presumably, Ben Adams and Justin Adams), there is a reasonable inference that the alleged tortfeasors were the Defendants' employees.

## IV.  CONCLUSION

By finding that Plaintiff's Second Amended Complaint cures the defects in his original Complaint, this Court has ruled as a matter of law that the Plaintiff has adequately pled an employment relationship with the Defendants sufficient to state a claim under Title VII and that the alleged tortfeasors are the Defendants' employees for purposes of state-law vicarious liability.  However, as the parties note, Defendants' Motion to Dismiss raised additional grounds for dismissal that the Court has not yet addressed.  Because over a year has passed since the Defendants filed their motion, the Court will order the parties to submit supplemental briefs on those remaining issues.

Accordingly, for the reasons stated herein, **IT IS ORDERED** as follows:

(1)     Plaintiff's Motion to Amend Judgment (Doc. # 19) is hereby **GRANTED**;

(2)     Plaintiff's Motion to Amend Complaint (Doc. # 21) is hereby **GRANTED**.  The Clerk of Court shall docket Plaintiff's Second Amended Complaint (Doc. # 20) accordingly; and

(3)     The parties shall file Supplemental Memorandum on Defendant's Motion to Dismiss (Doc. # 5) **not later than December 11, 2014**.

This 21st day of November, 2014.



Signed By:

*David L. Bunning*

United States District Judge

G:\DATA\ORDERS\London\2013\13-141 order granting amended complaint.wpd