**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION**
**AT LONDON**

**CIVIL ACTION NO. 13-141-DLB**

**BILLY J. HALCOMB**                                                                    **PLAINTIFF**

**vs.**                              **MEMORANDUM OPINION AND ORDER**

**BLACK MOUNTAIN RESOURCES, LLC and**
**ALPHA NATURAL RESOURCES, INC.**                                    **DEFENDANTS**

*** *** *** ***

In this sexual harassment case, Plaintiff Billy J. Halcomb brings a Title VII hostile-work-environment claim, as well as state-law claims for assault, battery, and intentional infliction of emotional distress (IIED) against his former employers, Defendant Black Mountain Resources, LLC and Defendant Alpha Natural Resources, Inc. Black Mountain and Alpha have filed a Federal Rule of Civil Procedure 12(b)(6) Motion to Dismiss. Because the facts in the Amended Complaint (Doc. # 28) make it plausible that Black Mountain and Alpha are liable under Title VII, but do not lead to a reasonable inference that they are vicariously liable for the state-law claims, their Rule 12(b)(6) motion is **granted in part** and **denied in part.**

**I.  FACTUAL AND PROCEDURAL BACKGROUND**

On August 26, 2014, the Court granted Black Mountain and Alpha's Rule 12(b)(6) motion because Halcomb's original complaint failed to allege that they were his employers. (Doc. # 18 at 5). Halcomb then filed a Motion to Amend Judgment (Doc. # 19) and Motion

1

for Leave to Amend Complaint (Doc. # 21).  The Court granted both motions, holding that the amended complaint cured the defect in the original complaint insofar as it alleged a plausible employer-employee relationship.  (Doc. # 27).  A year having passed since Black Mountain and Alpha filed their motion to dismiss, the Court ordered the parties to file supplement briefs on those grounds for dismissal the Court did not previously address.  *Id.* The matter is now fully briefed and ripe for review.  (Docs. # 5, 14, 15, 30, 31, 38, 39).

Because this case is before the Court on a motion to dismiss, the following facts are taken from Plaintiff's Amended Complaint (Doc. # 28) and accepted as true.  *Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 716 (6th Cir. 2005).  Plaintiff Billy J. Halcomb is a coal miner.  (Doc. # 28 at ¶ 3).  At all relevant times, he worked at the Panther and Stillhouse mines in Harlan County, Kentucky, which were operated by Defendant Black Mountain Resources, LLC.  *Id.* at ¶¶ 3, 6.  Black Mountain is a subsidiary of Defendant Alpha Natural Resources, Inc.  *Id.* at ¶ 4.  Halcomb obtained his job at the mines by filling out an application at Black Mountain's office.  *Id.* at ¶ 7.  Alpha's address appeared on Halcomb's paychecks, its name in the employer space of his benefits documents, and its logo in his employee handbook.  *Id.* at ¶¶ 8,9.

Halcomb alleges that from February to May 2012, two supervisors at the Panther mine, Ben Adams and Justin Adams, "engaged in a constant, pervasive pattern of abusive and demeaning sexual conduct . . . directed at [him]."  *Id.* at ¶ 12.  This conduct included "the rough and unwanted sexual grabbing of [his] genitals" and "crude, vulgar sexual language."  *Id.* at ¶¶ 12, 13.  He suggests that during this period other hourly employees of Black Mountain and Alpha also engaged in "unwanted and inappropriate sexual conduct directed at [him], including sexual grabbing and vulgar sexual language."  *Id.* at ¶ 14.

2

In June 2012, Halcomb complained about the conduct to Black Mountain and Alpha management, but according to Halcomb, they conducted only a "superficial investigation." *Id.* at ¶ 15. Afterwards, Black Mountain's personnel director, Rick Raleigh, transferred Halcomb to a different mine. *Id.* at ¶ 16. Halcomb was apparently then transferred a second time, and the following day, Black Mountain and Alpha held a sexual harassment workshop at Black Mountain's office in Benham, Kentucky. *Id.* at ¶ 17. Although all the others miners were told that they had to attend, Raleigh told Halcomb that he was not allowed to be at the meeting. *Id.* It is Halcomb's position that Black Mountain and Alpha did not "satisfactorily resolve[]" his complaints. *Id.* at ¶ 18.

Halcomb eventually filed a sex discrimination charge with the Equal Employment Opportunity Commission (EEOC). *Id.* at ¶ 18; Ex. D. The EEOC determined that there was evidence that Halcomb was subjected to a hostile work environment, and after conciliation efforts failed, issued Halcomb a right to sue notice. *Id.* at ¶ ¶ 19, 20; Exs. E, F. Halcomb then filed this suit, alleging that as a result of the harassment he has been diagnosed with major depressive and post traumatic stress disorder. *Id.* at ¶ 21.

## II. ANALYSIS

### A.    Standard of review

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard is met when the facts in the complaint allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint need not contain "detailed factual allegations," but must contain more than mere "labels and conclusions." *Id.* Put another

way, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## B.   Title VII hostile work environment

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e–2(a)(1). Title VII recognizes hostile-work-environment claims based on sexual harassment when a plaintiff proves five elements: (1) he is a member of a protected class; (2) he was subjected to unwelcome sexual harassment; (3) the harassment was based on his sex; (4) the harassment created a hostile work environment; and (5) the employer is liable. *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 733 (6th Cir. 2006). Black Mountain and Alpha do not dispute that Halcomb has pled facts establishing the first two elements, so the Court will address only the last three.

### 1.     *It is plausible that the harassment was based on Halcomb being a male*

Title VII is directed only at discrimination "because of sex," it "does not prohibit all verbal or physical harassment." *Oncale v. Sundown Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998). Specifically, it protects "members of one sex [who] are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 25 (1993) (Ginsburg, J., concurring)). With mixed-gender harassment, the inference of discrimination is "easy to draw" because "'it is reasonable to assume' that the harassment would not have been done to members of the same sex." *Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463,

4

467 (6th Cir. 2012) (quoting *Oncale*, 523 U.S. at 80). However, in same-gender discrimination claims like the one here, that inference is not "automatically available." *Id.*

In same-sex harassment cases, a plaintiff can establish an inference of actionable harassment by producing (1) "'credible evidence that the harasser was homosexual,' (2) evidence that 'make[s] it clear that the harasser is motivated by general hostility to the presence of [the same sex] in the workplace,' or (3) 'comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace.'" *Id.* at 467-68 (alterations in original) (quoting *Oncale*, 523 U.S. at 80).

Black Mountain and Alpha contend that Halcomb's Amended Complaint is deficient because he does not allege one of these "proof elements," and further suggest that there are no facts supporting an inference that the harassment was based on Halcomb's status as a male. (Docs. # 5 at 6; 30 at 4). These arguments fail because they hold Halcomb to a higher pleading standard than the Federal Rules of Civil Procedure and case law require. Contrary to Black Mountain and Alpha's assertion, Halcomb does not need to expressly plead that the "the harassment was because of his male sex [or] that . . . the alleged harassers [are] homosexual." (Doc. # 30 at 4). Such allegations would be conclusory and a mere recitation of Title VII's elements, which would make them insufficient to support Halcomb's claims. *See Iqbal*, 556 U.S. at 678. Moreover, Halcomb need not make "detailed factual allegations," but only has to plead facts sufficient to allow the Court to "draw the reasonable inference that [Black Mountain and Alpha are] liable for the misconduct alleged." *See id.*

The facts Halcomb pleads in his Amended Complaint are sufficient to raise a reasonable inference that he was harassed because he is a male. The harassment

included "vulgar sexual language" and "the rough and unwanted sexual grabbing of [his] genitals." (Doc. # 28 at ¶¶ 12-15). Because the language and touching were sexual in nature, and specific to the male anatomy, there is a reasonable inference that the harassers were either motivated by a general hostility towards men in the workplace or are homosexual. Whether the evidence produced will ultimately create a genuine dispute of material fact, or reach a preponderance, is for later stages in the litigation and not the inquiry the Court is concerned with here.

Next, Black Mountain and Alpha suggest that *Wasek* is factually and legally similar and therefore mandates dismissal of Halcomb's hostile-work-environment claim. (Doc. # 5 at 6). Although Black Mountain and Alpha cite good case law, they fail to recognize that *Wasek* was decided on summary judgment. 682 F.3d at 465. To be sure, the court dismissed the plaintiff's hostile-work-environment claim because there was "*no evidence* of [the harasser's] sexuality." *Id.* at 468 (emphasis added). And therein lies the rub. In *Wasek*, the plaintiff had an opportunity through discovery to establish the facts that he needed to support his claim but failed; here, discovery has not yet begun, and therefore Halcomb's burden is much lighter at this stage of the case.

### 2. *It is plausible that the harassment created a hostile work environment*

Harassment creates a hostile work environment when "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993). The test is both objective and subjective, which is to say that the conduct must "constitute a hostile or abusive working environment both to the reasonable person and the actual victim."

6

*Randolph v. Ohio Dep't of Youth Servs.,* 453 F.3d 724, 733 (6th Cir. 2006) (citing *Harris*, 510 U.S. at 21-22).

A court must consider the totality of the circumstances to determine whether the harassment was severe and pervasive. *Id.* In making this determination, the following factor are relevant: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. Also relevant is "[t]he effect on the employee's psychological well-being." *Id.*

Black Mountain and Alpha contend that Halcomb "has not pled facts that meet the required standard for a hostile work environment." (Doc. # 5 at 7). They allege that there are "no specific allegations regarding the nature, the extent or the duration of the alleged harassment" (*Id.*), and further fault Halcomb for not pleading that his psychological effects impacted his employment. (Doc. # 30 at 5).

Again, Black Mountain and Alpha misconstrue Halcomb's burden at the motion to dismiss stage. Halcomb has pled that from February through May 2012, "two supervisors," as well as other "hourly employees," "directed . . . vulgar sexual language" at him and "grabb[ed] his genitals." (Doc. # 28 at ¶¶ 12-15). Although Halcomb could have been more specific about the number of times the harassment took place and the language that was used, he alleges that there were multiple harassers and that the conduct lasted for several months, which leads to an inference that the harassment occurred frequently. Moreover, some of the harassment was physical as opposed to merely verbal. Finally, Halcomb alleges that as a result of the harassment he has been "diagnosed with major depressive disorder and post traumatic stress disorder." *Id.* at ¶ 21. Accepting all this as true, and

drawing all inferences in Halcomb's favor, it is plausible that discovery will reveal an objectively and subjectively abusive work environment that adversely affected [Halcomb's] ability to do his job.  *See Bailey*, 526 F.3d at 886.

### 3.   *Black Mountain and Alpha are plausibly liable for the harassment*

A plaintiff can establish employer liability in a hostile work environment claim based on two theories: co-worker liability and supervisor liability.  *Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 348 (6th Cir. 2005).  When the harasser is a co-worker, the employer is liable if it "knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate corrective action."  *Id.* (quoting *Hafford v. Seidner*, 183 F.3d 506, 513 (6th Cir.1999)).  When the harasser is a supervisor, the employer is vicariously liable absent an affirmative defense.  *Id.*  For Title VII purposes, a supervisor is an employee who is "empowered by the employer to take tangible employment actions against the victim."  *Vance v. Ball St. Univ.*, 133 S. Ct. 2434, 2439 (2013).

Black Mountain and Alpha assert that the factual allegations are insufficient to establish that they are potentially liable for the harassment.  (Docs. # 5 at 8-9; 30 at 7).  Accepting the facts in the Amended Complaint as true, the Court disagrees.

Halcomb states that in June 2012 he "complained about the unlawful sexual conduct to management officials of Black Mountain and Alpha."  (Doc. # 28 at ¶ 15).  He avers that they responded by conducting a "superficial investigation," transferring him to another mine, and then preventing him from attending a sexual harassment workshop.  *Id.* at ¶ 16.  Black Mountain and Alpha suggest that the transfer is proof that they took prompt corrective action.  But to reach that conclusion, the Court has to view the facts in Black Mountain and Alpha's favor, which is improper at the Rule 12(b)(6) stage.  Halcomb's allegation that Black

8

Mountain and Alpha did not "satisfactorily resolve[]" his complaints when it transferred him twice and kept him out a sexual harassment workshop creates a reasonable inference that Black Mountain and Alpha failed to properly respond to the harassment.  Because the Court has determined that Black Mountain and Alpha are potentially liable for co-worker harassment, it need not decide at this time whether Halcomb has established supervisor liability.

C.     **State-law claims**

Halcomb brings state-law assault, battery, and IIED claims against Black Mountain and Alpha based on vicarious liability.  (Doc. # 28 at ¶¶ 23, 25).  He contends that in a vicarious liability analysis the critical question is whether the harassment "was foreseeable," and asserts that vicarious liability can be imposed on Black Mountain and Alpha because they knew about the harassment.  (Doc. # 31 at 12-14).

Halcomb's argument ignores the Kentucky Supreme Court's declaration that it "has rejected [an] approach . . . which focuses exclusively on foreseeability and refuses to consider motive." *Patterson v. Blair*, 172 S.W.3d 361, 369 (Ky. 2005); *see Scottsdale Ins. Co. v. Sandler*, 381 F. App'x 554, 556 (6th Cir. 2010) (recognizing that *Patterson* "explicitly abrogat[ed] Kentucky precedent that focused on foreseeability in favor of a test examining only employee motive").  In Kentucky, an employer is liable for an intentional tort committed by an employee when "its purpose . . . is wholly or in part to further the [employer's] business." *Patterson*, 172 S.W.3d at 369 (citation omitted). Therefore, if the employee "acts from purely personal motives . . . which [are] in no way connected with the employer's interests, he is considered in the ordinary case to have departed from his employment, and the [employer] is not liable." *Id.* (citation omitted).

An overview of Kentucky case law helps clarify when vicarious liability is appropriate. For example, vicarious liability will attach when a grocery store employee shoots a patron he mistakenly believes is robbing the store, *Frederick v. Collins*, 378 S.W.2d 617, 619 (Ky. 1964), or when a car dealership employee shoots out the tires of a car he is attempting to repossess, *Patterson*, 172 S.W. 3d at 372.  In these situations, the employer is held liable because the employee is attempting to protect the employer's property and therefore is acting to further the employer's business.

On the other hand, vicarious liability does not attach when a priest has an affair with the wife of a couple seeking marriage counseling, *Osborne v. Payne*, 31 S.W.3d 911, 915 (Ky. 2000), or when a library employee sexually molests a patron, *Z.A. v. City of Louisville*, No. 2004-CA-00189-MR, 2005 WL 1491554, at *5 (Ky. June 24, 2005).  The employer is not held liable in these situations because the employee is motivated by a "desire to satisfy [his] own sexual proclivities."  *Am. Gen. Life & Accident Ins. Co. v. Hall*, 74 S.W.3d 688, 692 (Ky. 2002).  Another example of an employee acting outside the scope of his employment occurs when a bus driver gets out of his bus and assaults another driver in a fit of road rage.  *Wood v. Southeastern Greyhound Lines*, 194 S.W.2d 81, 83-84 (Ky. 1946).

The facts alleged in the Amended Complaint, even when accepted as true and viewed in the light most favorable to Halcomb, fall within the *Osborne*, *Z.A.*, and *Wood* line of cases.  To be more specific, it is not plausible that Halcomb would be able to produce evidence that the harassers' genital grabbing and vulgar sexual language was intended to further the business of a mining company.  *See Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705, 732 (Ky. 2009) ("No amount of legal rhetoric can . . . explain how a sexual

10

assault furthers a hospital's business as a medical care provider.").  If Halcomb's co-workers did engage in this behavior, they were motivated purely by personal reasons, and therefore Black Mountain and Alpha are not vicariously liable for their actions.  Accordingly, Halcomb's state-law claims are dismissed.

### D.    Punitive damages and Kentucky Workers' Compensation Act

In his Amended Complaint, Halcomb makes a claim for punitive damages based on his state-law causes of action, which led the parties to brief the constitutionality of Ky. Rev. Stat. § 411.183(3).[1]  In Black Mountain and Alpha's supplemental motion to dismiss, they assert that the Kentucky Workers' Compensation Act, Ky. Rev. Stat. § 342.690, provides the exclusive remedy for Halcomb's state-law tort claims.  (Docs. # 30 at 13; 39 at 1).  Because Halcomb's state-law claims have been dismissed, the Court need not reach these issues.

### III.  CONCLUSION

Accordingly, for the reasons stated herein, **IT IS ORDERED** as follows:

(1)    Defendants' Motion To Dismiss (Docs. #  5, 29) is **GRANTED** as to **Counts II** (assault and battery) and **III** (intentional infliction of emotional distress).  Those Counts are hereby **DISMISSED WITH PREJUDICE**; and

(2)    Defendants' Motion To Dismiss (Docs. # 5, 29) is **DENIED** as to **Count I** (Title VII).

---

[1]  Ky. Rev. Stat. § 411.184(3) provides: "In no case shall punitive damages be assessed against a principal or employer for the act of an agent or employee unless such principal or employer authorized or ratified or should have anticipated the conduct in question."

This 17th day of April, 2015.



Signed By:

**_David L. Bunning_**

**United States District Judge**

G:\DATA\Opinions\London\13-141 MOO on MTD2.wpd